Edwin H. Brown *vs.* Providence, Warren and Bristol Railroad Company.

On the trial of a petition for the assessment of damages caused by taking land for a railroad, even after the petitioner has given evidence that the land was peculiarly valuable as a place of entertainment, and leased as such, evidence that intoxicating liquor was sold on the land by the tenant, is inadmissible to reduce the value of the estate.

On the assessment of damages occasioned by the taking of land for a railroad, evidence that the remaining land of the petitioner would be benefitted by the location of a station

at that place is inadmissible in reduction of damages, if no act has been done by the proprietors of the railroad toward establishing such a station.

The damage, occasioned to buildings by blasting rocks within the line of a railroad, and sought to be recovered of the proprietors of the railroad, may be proved by evidence of its pecuniary amount.

A printed transcript of a copy of the assessor's valuation is inadmissible in evidence of the value of land, in assessing damages for the taking of it for a railroad.

The award of the county commissioners, assessing damages for land taken for a railroad, is inadmissible on the hearing before a sheriff's jury, to prove the amount of land taken.

PETITION for a jury to assess the damages sustained by the taking of land in Seekonk in 1854 for a railroad, the petitioner being dissatisfied with the amount awarded him by the county commissioners. The jury returned a verdict for the sum awarded by the county commissioners; and the presiding officer, at the request of the petitioner, certified the following rulings to the court of common pleas :

" At the trial, the petitioner's counsel claimed that the land taken was peculiarly valuable as a place for the entertainment of shore parties ; and produced testimony tending to show that he had leased it for that business to a tenant for five years, at $350 a year. The respondents' counsel stated that he expected to prove that one of the peculiar elements of value of the premises was the peculiar facilities for selling intoxicating liquors, and that the place would be very much less valuable to a tenant if liquors were not sold there ; and claimed a right to cross-examine the petitioner's witnesses for the purpose of showing that it was sold and used there ; and produced a witness to prove the same thing.

" To this testimony the petitioner objected, but I admitted it ; and the testimony given tended to show that liquors had been sold while in the tenant's occupation, in a building standing over the edge of the bay, belonging to the premises. I instructed the jury, thereupon, that they must be satisfied that the sale of liquors on the premises was contemplated by both parties at the time of leasing, before such sale could operate on their minds to decrease the rental value of the estate as it was alleged to have been before the location of the railroad. There was no evidence offered as to whether or not

the parties contemplated the sale of liquors at the time of leasing.

" A witness, produced by the respondents, testified that he was a farmer and lived near Brown's place, and that he had entertained shore parties for two years past. The respondents asked him, ' What, in your opinion, will be the effect on Brown's place of connecting that place with the city of Providence by railroad, for shore purposes ? ' To this the petitioner objected as incompetent, and because it is not shown that there will be a station at Brown's place. The respondents' counsel stated that they intended to follow up this evidence by proving that there is to be a station at or near Brown's place, and that the company would do what was for their interest, and that it would be for their interest to put a station in Brown's neighborhood. I overruled the objections, and the witness answered, ' If they have a station at Brown's, the Vue de l'Eau estate, or Mrs. Gardiner's, the effect will be good.'

" The only testimony offered that there was to be a station at Brown's place was that of the president and treasurer of the company, who testified as follows : *Question.* ' Is there to be a station on Brown's, the Vue de l'Eau estate, or Mrs. Gardiner's ? ' *Answer.* ' It has been thought by the directors that Brown's place would be a proper place to put a station. There has been no positive determination; the station will be established on one of the three estates named, if a road can be obtained to the highway. I do not know but it will be at any rate.' *Question.* ' Do you know of any obstacle to prevent a passage to and from the highway ? ' *Answer.* ' I know of no obstacle, and of no positive grant.' To this testimony the petitioner objected, but I admitted it.

" The petitioner claimed that in constructing their road the respondents did damage to his buildings near the land taken, by blasting rocks within the line of their road, and offered a witness to prove the amount, pecuniarily, of the damage ; but the respondents objected to the testimony, and I excluded it.

" The respondents offered a witness, who testified that he printed a book of the valuation of Seekonk in 1850, and that it

was a correct transcript of the copy furnished to him by the chairman of the board of assessors of Seekonk for that year; and thereupon the respondents offered the book in evidence of the true value of the whole estate in 1850.

" To this testimony, and the admission of the tax book as evidence, the petitioner objected, and contended that the printed book was not evidence of the contents of the assessors' valuation book ; that the valuation book itself was incompetent evidence, and that it was made so long before the damage complained of as not to be competent evidence of the value of the place at the time of the damage.   I overruled the objection and admitted the testimony, and instructed the jury that it must be used for no other purpose than that for which it was offered ; that it might be used by them as showing the entire valuation of Brown's estate at the time the valuation was made, and that it was reliable evidence for that purpose, but that it could not be used to aid them in determining the amount of damage done by the location of the road.

" The petitioner offered a witness to prove the amount of the petitioner's land within the located line of the road, who testified that he had measured the same, and gave the measurements, part of the same being above and part below high water mark.   The respondents offered the award of the county commissioners in evidence, in order to show the area of the land taken by them for the construction of the road.   The petitioner objected to the award as evidence of the amount of land taken ; but I admitted it, and instructed the jury that, in the absence of testimony controlling the statement of the amount of land taken and the boundaries thereof, as set forth in the commissioners' award, and as set forth in the warrant under which the jury was empanelled, it would be proper for them to be guided, in their estimate of the amount of land taken, by said award and warrant; but on the contrary, if the testimony of the only witness called to that point satisfied them that more land had been taken, they would so find."

The court of common pleas set aside the verdict, and the respondents appealed to this court.

*L. Shaw, Jr.* for the respondents.

*C. B. Farnsworth,* for the petitioner.

DEWEY, J. 1. As to the first point raised in the report, the competency of the evidence tending to show actual sales of liquors at the petitioner's place of entertainment, the court are of opinion that it was inadmissible. The evidence would be objectionable, as leading to an examination of other and irrelevant issues. It could not properly be introduced, for the purpose stated in the report, to show that the place would be very much less valuable to a tenant if liquors were not sold there; as the fact whether intoxicating liquors hereafter might be lawfully sold there was not one upon which the jury had any sufficient data to judge. The evidence was of a nature calculated to prejudice some minds against the petitioner, and to withdraw the jurors from an impartial estimate of the actual damages sustained by the petitioner. The instruction to the jury is supposed to have rendered this exception unavailable. Such would be the case if the evidence were to be understood as entirely withdrawn from the jury. But that does not seem to have been directly done, though such may have been substantially the effect, taking the evidence to have been as stated in the report.

2. The testimony of the witnesses in respect to the probability of the location of a station at or near Brown's place, and the probable effects that would result from establishing a station there, was of too uncertain a character to be submitted to the jury as a fact by which the damages could be affected. No act had been done by the corporation, establishing such station. If they would make it a substantive ground for reduction of damages, they should proceed to locate it; which being done, the fact of the location of the station will be easily made certain, and the further important fact will be apparent, whether the benefits accruing therefrom are such as are peculiar to the plaintiff, or only a benefit to his estate, which he shares in common with others from the establishment of the railroad.

3. The petitioner was entitled to have damages assessed by the jury for the injury to his buildings near the land taken, by blasting rocks within the line of the road. *Dodge* v. *County*

*Commissioners*, 3 Met. 380. That such damages were properly the subject of inquiry seems, from the argument for the respondents, to be conceded; and the objection now urged is as to the mode of proof. The objection, in that distinct form, does not appear to have been taken at the hearing; and if it had, would have been unavailable. *Shaw* v. *Charlestown*, 2 Gray, 107. But how far the particular witness was competent to give an opinion as to the amount of the damages, and whether such inquiry should be made at all, or, if made, be preceded by a detailed statement of the facts as to the nature of the damage and the extent, must depend upon a more full view of the whole case upon this ground of damages than is now before the court.

4. The printed book was not competent evidence to prove the valuation of the assessors, as it was but a transcript of a copy of the valuation. It ought therefore to have been rejected. It is also questionable whether any valuation made for the special purpose of taxation, and that some years previously to the assessment of damages by the jury, could be a useful or proper aid to the jury in fixing the value of the land, or the damages sustained by the petitioner on the location of the road. The presiding officer said substantially this to the jury, but the evidence should have been wholly rejected.

5. The admission of the award of the county commissioners to show the quantity of land was, as the case is stated in the report, clearly erroneous. The location, as made by the railroad company, is the proper guide for the jury as to the extent of the land taken. This would ordinarily appear in the warrant for a jury, or the papers connected therewith. The award of the county commissioners, assessing the damages, would not, in itself, be competent evidence of the extent of the location. Its recitals might, and probably would, correspond with the location. But if a subject of inquiry and a matter of controversy, it must be shown from other sources.

*Verdict set aside.*